# In the United States Court of Federal Claims

No.  10-696C
(Filed:  September 7, 2012)

| | |
|---|---|
| DANIEL E. CAMERON,<br><br>          Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Military Pay Act; whether Army failed to follow its own directives and regulations is a justiciable issue; an agency's construction of its own regulations is entitled to deference; Army Regulation 135-18; National Guard Bureau had discretion to interpret "eligible" to exclude Active Guard Reserve ("AGR") officer in Title 32 (state-level) AGR program on a time-limited tour in Title 10 (federal-level) AGR status from eligibility for consideration by a Title 10 continuation board for continuation of active federal service beyond 20 years. |

*Chester H. Morgan, II*, Colorado Springs, CO, for plaintiff.

*Douglas K. Mickle*, United States Department of Justice, Washington, DC,  with whom were *Stuart F. Delery*, Acting Assistant Attorney General, and *Jeanne E. Davidson, Director*, for defendant.

## OPINION

**FIRESTONE**, *Judge*.

This case involves a challenge by the plaintiff, Colonel Daniel Cameron ("Colonel

Cameron"), a former member of the Active Guard Reserve ("AGR"),[1] to a decision of

---

[1] The purpose of the AGR Program is to "meet the full-time support requirements for [Army National Guard of the United States] and [United States Army Reserves] projects and programs."  Army Regulation ("AR") 135-18 ¶ 1-6 (All references to AR 135-18 are to the December 10, 2003 version of AR 135-18, unless the prior June 19, 1996 version was in effect and was materially different.).  The Program includes soldiers in the Army National Guard of the United States ("ARNGUS") and United States Army Reserves ("USAR").  AR 135-18 ¶ 1-1.  Colonel Cameron was an ARNGUS soldier.

the Army Board for Correction of Military Records ("ABCMR") denying Colonel

Cameron's claim for relief.  Colonel Cameron claims that he was wrongfully discharged

from active duty after 20 years of service without consideration by a retention board in

violation of Army Regulation ("AR") 135-18 ¶ 4-7.[2]  He seeks to be restored to active

duty pending consideration by a retention board as well as accompanying back pay and

allowances.

Presently pending before the court is Colonel Cameron's motion for judgment on

the administrative record.  Also pending is the motion of the United States ("the

government") to dismiss Colonel Cameron's complaint for lack of subject matter

jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims

("RCFC") for failure to state a money-mandating claim, or, in the alternative for failure

to state a claim upon which relief can be granted under RCFC 12(b)(6).  The government

argues that Colonel Cameron's claim is nonjusticiable.  Should the court deny its motion

to dismiss, the government seeks judgment on the administrative record.

---

[2] AR 135-18 was amended while Colonel Cameron was on active duty and during the time he claims he was denied consideration by a retention board.  The original provision in AR 135-18 regarding "Selective Retention" stated:

> All AGR officer personnel will be released from AD [active duty] . . . . when they have attained 20 years and 1 month of qualifying service. . . .

> *a.* AGR officers . . . may request retention . . . . Requests will be submitted when the soldier completes 19 years of such service.  The requests will be sent through command channels. . . .

AR 135-18 ¶ 4-12 (June 19, 1996).  On December 10, 2003, effective January 12, 2004, AR 135-18 was amended to provide a new board process for retention, which states in relevant part:  "AGR commissioned officers and warrant officers may be retained on [active duty] beyond 20 years of [active service] through a board process, convened at least annually.  Consideration of eligible officers for retention is automatic, as such; officers need not apply for retention consideration."  AR 135-18 ¶ 4-7.

For the reasons set forth below, the court holds that it has subject matter jurisdiction over Colonel Cameron's claim and that his claim states a justiciable controversy. Thus, the government's motion to dismiss under RCFC 12(b)(1) and RCFC 12(b)(6) is **DENIED**. The court further finds for the reasons discussed below that Colonel Cameron was not improperly denied consideration by an active duty retention board before he was discharged from active duty. Therefore, the ABCMR decision must be upheld.

## I.     BACKGROUND

The events that gave rise to this suit are set forth in the Administrative Record ("R.") and are not in dispute. Colonel Cameron enlisted in the Regular Army on January 30, 1981 and began active duty in the U.S. Army Reserve ("USAR") on March 18, 1983. Colonel Cameron was released from active duty in the USAR on October 1, 1992 and accepted an appointment in the Oregon Army National Guard ("ORARNG") on February 24, 1993. In September 1998, Colonel Cameron entered the AGR Program on full-time National Guard duty ("FTNGD") under Title 32 of the United States Code (the "Code").[3] On May 6, 2002, Colonel Cameron's unit was ordered to active duty under the authority of 10 U.S.C. § 12302, and Colonel Cameron's status changed from Title 32 AGR (state status) to Title 10 AGR (federal status). On January 28, 2003, Colonel Cameron was

---

[3] All members of the AGR Program serve on active duty ("AD") in a federal status under Title 10 of the United States Code or on FTNGD in a state status under Title 32. AR 135-18 ¶ 1-1*a-b*. Under AR 135-18, AGR soldiers are ordered to active duty or FTNGD for an initial 3 year period. Subsequent periods of duty for AGR officers are for an indefinite period until they have attained 20 years of active federal service. Id. ¶ 2-6. The same was true when Colonel Cameron joined the AGR Program. AR 135-18 ¶ 2-9 (June 19, 1996).

released from active duty and reverted to his Title 32 AGR status in the ORARNG.

Colonel Cameron was promoted to Colonel (O-6) effective September 29, 2003.

On August 19, 2003, the National Guard Bureau ("NGB")[4] ordered Colonel

Cameron to active duty.  The orders stated that "the soldier is transferring from Title 32

AGR, to Title 10 AGR."  R. 119.  The purpose of the transfer was for Colonel Cameron

to serve as a "NORTHCOM MISSILE DEFENSE OFFICER."  Id.  The orders stated that

the assignment was "voluntary" and that he was "continued on active duty with his

consent and the consent of the Governor of the State of Oregon."  R. 118.  The orders

provided that Colonel Cameron would be serving for "Two years and Five months (01

October 2003-28 February 2006."  Id.  The orders concluded by stating that "[t]his is a

one time, occasional tour."  R. 119.  In the portion marked, "FOR ARMY USE," the

orders indicated that he was ordered into active duty under 10 U.S.C. § 12301(d)[5] and

was not to be accessed into the strength of the active army.  R. 118-19.

Because Colonel Cameron would have completed twenty years of active service

on or about January 27, 2006, these orders extended his service beyond twenty years.

---

[4] The NGB is responsible for managing all ARNGUS related matters in the AGR Program.  AR 135-18 ¶ 1-4*d* ("The Chief, National Guard Bureau (CNGB) will . . . under overall Army policy, develop and implement policies and procedures for efficient management and effective use of the ARNGUS AGR personnel force.  Such policies will be within the guidelines of the program prescribed by this regulation.").

[5]     At any time, an authority designated by the Secretary concerned may order a member of a reserve component under his jurisdiction to active duty, or retain him on active duty, with the consent of that member. However, a member of the Army National Guard of the United States or the Air National Guard of the United States may not be ordered to active duty under this subsection without the consent of the governor or other appropriate authority of the State concerned.

10 U.S.C. § 12301(d).

Pursuant to AR 135-18, "unless an AGR officer is approved for retention [in accordance with paragraph 4-7] he or she will be released from [active duty] or [full-time National Guard duty]" upon reaching twenty years of active service.  AR 135-18 ¶ 2-6*b*.  Upon reaching twenty years of active service, AGR soldiers can remain on active duty or FTNGD if they are selected for retention.  Under the version of AR 135-18 in effect on October 1, 2003, when Colonel Cameron was ordered to active duty, officers had to apply for retention to the National Guard Bureau.  AR 135-18 ¶ 4-12 (June 19, 1996).  Effective January 14, 2004, the Army amended AR 135-18 to provide for consideration for retention by "retention boards."  See AR 135-18 ¶ 4-7.  As noted above, supra note 2, the amended regulation also provided that "consideration of eligible officers for retention is automatic . . . [and] officers need not apply for retention consideration."  AR 135-18 ¶ 4-7*b*(1).  Under this version of AR 135-18, boards are to be "convened at least annually."  AR 135-18 ¶ 4-7*b*.

Before AR 135-18 was amended, and while Colonel Cameron was on active duty, the Assistant Secretary of the Army for Manpower and Reserve Affairs wrote to the head of the NGB, on February 11, 2003, announcing a retention procedure that was then incorporated into the AR 135-18 amendments.  R. 22.  The February 11, 2003 memorandum states:  "Effective the date of this memorandum, all AGR officers, to include warrant officers and commissioned warrant officers, who are retained beyond 20 years of AFS [active federal service], will be retained through a board process based on Department of the Army standards."  Id.  The memorandum also made clear that consideration for retention would be "automatic."  Id.

On September 3, 2003, the NGB issued instructions for implementing the February 11, 2003 order, in a memorandum entitled, the "2004 Army National Guard (ARNG) AGR Active Federal Service Tour Continuation Board (AFSTCB)."  R. 37. According to the September 3, 2003, memorandum, officers who fall within the "zone of consideration" and serving under state authority in the ARNGUS as FTNGD under Title 32 would be boarded by the states.  Id.  ARNGUS soldiers serving on active duty under Title 10 would be boarded by the NGB.  Id.  The NGB memorandum further advised that "states and territories may conduct an AFSTCB [Active Federal Service Tour Continuation Board] at anytime during the period 1 December 2003 to 31 January 2004, to consider eligible Title 32 AGR officers . . . who fall within the zone of consideration for extension beyond 20 years and one month of [active federal service]."  Id.  The memorandum went on to state that "[t]he [NGB] will conduct the AFSTCB during the same period for Title 10 AGR officers who fall within the zone of consideration."  Id. The zone of consideration was defined in the memorandum as "[o]fficers who will achieve 19 years or more of [active service] from 1 July 2004 through 30 September 2005."  Id.

On October 9, 2003, the NGB issued a memorandum announcing the 2004 Army National Guard AGR Active Federal Service Tour Continuation Board.  R. 120.  The memorandum stated:  "On 12 January 2004, a board will convene to evaluate all Title 10/AGR officers, at the officer's option, who will either reach 19 years of [active federal

service] or whose current extension will end, between 1 July 2004 and 30 September 2005." Id.[6]

Although Colonel Cameron was on active duty in Title 10 status and would reach nineteen years of active service in January 2005, he did not receive a copy of the October 9, 2003 memorandum or any other notice of the 2004 ARNG AGR Tour Continuation Board.  Nonetheless, Colonel Cameron learned of its existence and contacted the NGB via telephone on December 10, 2003 to ask why he had not received notification.  Later that day, Colonel Cameron sent an e-mail to another NGB officer, Colonel Douglas Pritt. In his e-mail to Colonel Pritt, Colonel Cameron explained that he had just telephoned Colonel Owens, the Division Chief of the Office of Staff Management at NGB, and had learned from Colonel Owens that he was ineligible to apply for continuation of active duty because his orders were for a limited period of service as a Title 10 officer.  Colonel Cameron's e-mail stated that he "want[ed] to keep serving, had planned to, and until this afternoon never realized that NGB did not see that as an option."  R. 129.

On December 22, 2003, Colonel Pritt e-mailed Colonel Cameron to announce that Colonel Studer, Chief of Staff of ORARNG, "will have a face to face meeting with the tours branch week of 12-16 Jan to review your situation."  R. 127.  The e-mail went on to state that Colonel Studer would speak with the ARNG Director "so we can get you considered for extension and other follow on assignments."  R. 127.  The next day, Colonel Pritt e-mailed Colonel Cameron again, explaining:  "Your command time,

---

[6] On December 3, 2003, ORARNG issued a memorandum announcing that its Title 32/AGR status continuation board would convene on January 26, 2004.  That board did not select any Title 32/AGR officers for continuation.  R. 9.

deployment and experience make you the ideal person to extend on active duty.  I am sure COL Studer will get the message to the correct people to get this fixed and if he can't then we will go back to LTG Schultz who was involved in your selection for your current assignment."  R. 124.

On January 28, 2004, after Colonel Studer learned that Colonel Cameron was on active duty for only a limited period of time "so that [he could be promoted] and serve out 20 years and then retire," R. 127, Colonel Studer e-mailed Colonel Cameron asking Colonel Cameron to explain his understanding of the situation.  Colonel Cameron responded the following day.  He stated that while he was aware of the limitation in his orders he did not believe that they could not be changed.  R. 126.  The e-mail chain concluded with a message from Colonel Studer to Colonel Cameron in which Colonel Studer claimed that he would "see if we have any ability to argue for you . . . to stay on Title X once you complete 20 y[ea]rs of service."  R. 126.

On May 31, 2005, while still on active duty at NORTHCOM, Colonel Cameron sent an application for an active duty tour extension beyond 20 years directly to the Chief of the NGB, through the Adjutant General of the ORARNG.  R. 130.  Colonel Cameron sought to continue serving in his "Title 10 Tour to US Northern Command, assigned as the Joint Operations Team Chief within the Standing Joint Force Headquarters – North Directorate."  R. 130.  Colonel Cameron stated in his request that his current active duty tour would expire on February 28, 2006 and that he requested an extension through August 31, 2007.  Colonel Cameron attached, as part of his request, the endorsements from two of his then current supervisors.  A third letter of endorsement was sent to the

Chief of the NGB on June 2, 2005.  Colonel Cameron never received an official response to his request.

Thereafter, USNORTHCOM sent three requests seeking to retain Colonel Cameron.  On January 9, 2006, USNORTHCOM sent the NGB a memorandum, asking that Colonel Cameron, who was to be retired effective February 28, 2006, "be recalled to active duty to fill the position designated below within [USNORTHCOM] with report date of 1 March 2006."  R. 134.  Ten days later, the Director of Manpower and Personnel for USNORTHCOM contacted the NGB again, explaining that retaining Colonel Cameron on active duty would "provide critical continuity to USNORTHCOM's Standing Joint Force Headquarters."  R. 133.  On March 3, 2006, USNORTHCOM sent a third petition to the NGB, once again asking that they retain Colonel Cameron on active duty.  None of these requests were answered.

Colonel Cameron's active duty tour ended on February 28, 2006 and he was retired from the ARNGUS, effective March 1, 2006.  Thereafter, Colonel Cameron began collecting an annuity at the pay grade of Colonel (O-6).

On June 1, 2006, Colonel Cameron submitted to the ABCMR a request for correction of his record and reinstatement to active duty, claiming that the Army had wrongfully discharged him from active duty when it failed to consider him for continued active duty as a Title 10 AGR officer, in contravention of Army regulations.  The ABCMR sought and received an advisory opinion from the NGB regarding Colonel Cameron's claim, in which the Chief of the NGB Personnel Division "recommend[ed] disapproval on COL (Ret) Cameron's request."  R. 108.  In its opinion letter, the NGB

explained that "for officers brought into the T-10 [Title 10] Tour, they are brought on a one time, one tour (OTOT) for no more than three years and extensions for continuation are not approved."  R. 110.  Additionally, the opinion stated that "officers are briefed before they come into the program," and thus presumably understand that their tours will not be extended.  R. 110.  The NGB opinion goes on to state that "most officers, once they complete the tour, revert back to the State of origin as either T-32 (AGR) or M-day if the State has an authorized position."  R. 110.  The ABCMR denied Colonel Cameron's request on March 26, 2007.  In its opinion, the ABCMR stated, in part:

> It is unfortunate that an officer of the applicant's caliber was not eligible to have his records reviewed by the AFSTCB, and subsequently selected for retention beyond 20 years.  This was not an oversight. . . . It appears that the applicant was not eligible for consideration for retention [on active duty] based on the fact that he was on a one time tour.

R. 100.

Colonel Cameron filed a second request for relief with the ABCMR on October 9, 2007.  In this request he cited the amended AR 135-18, which as previously noted states, in relevant part:

> AGR commissioned officers and warrant officers may be retained on AD [active duty] beyond 20 years of AS [active service] through a board process, convened at least annually.  Consideration of eligible officers for retention is automatic, as such; officers need not apply for retention consideration.

AR 135-18 ¶ 4-7*b*.  Based on the language in the above-quoted regulation, Colonel Cameron argued that as an AGR officer on "active duty" when he reached 19 years of service, he was entitled to automatic consideration by a board authorized to extend his active duty.

The ABCMR denied Colonel Cameron's second request for relief on April 10, 2008, stating that he "should not have received board consideration" since he "was not in the zone of consideration for the [2004 AFSTCB]." R. 88.  In its second denial opinion, the ABCMR acknowledged that Colonel Cameron's supervisors had endorsed his continuation on active duty but noted that "[c]learly [Colonel Cameron] was not simply overlooked." R. 88.

Colonel Cameron filed a third request for correction of his record to the ABCMR on March 20, 2009.  On September 17, 2009, the ABCMR rejected his third request.  In its denial, the ABCMR acknowledged that the "wording [of the April 2008 basis for denial] regarding the zone of consideration . . . may be imprecise." R. 77.  The ABCMR stated that there was never any dispute that Colonel Cameron was within the zone of consideration based on his 19 years of service.  The critical issue concerned his "eligibility" for retention in Title 10 status.  The ABCMR denied Colonel Cameron's request on the grounds that he failed to meet the "eligibility" criteria set by the NGB. Specifically, the ABCMR explained that Colonel Cameron was "ineligible" for continuation on active duty "based on the then existing NGB policy regarding Title 10 active duty tour policy (sic) for Army National Guard officers." R. 77.  Under that policy, the ABCMR explained, AGR officers serving on "one time tours of [active] duty" were not "eligible" for continued service on active duty and could only be extended by the National Guard in their state.[7]

---

[7] On October 13, 2004, the NGB issued guidance for the 2005 Active Service Continuation Boards under AR 135-18.  The guidance provided that "Eligible Officers" include "ARNG Title 10/32 AGR officers

Colonel Cameron filed suit in the United States District Court for the District of Colorado on February 16, 2010.  That court issued an order transferring Colonel Cameron's case to the United States Court of Federal Claims on August 12, 2010, and Colonel Cameron filed a verified complaint with this court on November 15, 2010.  Once the case was transferred, the government requested that the matter be remanded to the ABCMR for yet another round of consideration.  The court granted that motion on February 18, 2011.

Following remand, the ABCMR requested a second advisory opinion from the NGB aimed specifically at Colonel Cameron's rights under the amended AR 135-18. The ABCMR asked the NGB for its opinion on whether "[u]nder the terms of AR 135-18 in effect in 2004, should Colonel Cameron have been considered by the 2004 ARNG AGR [AFSTCB for Title 10 officers]?"  R. 23.  On September 23, 2011, the NGB provided the ABCMR with the requested advisory opinion, reiterating that Colonel Cameron was not eligible for consideration by the 2004 ARNG AGR continuation board. The NGB noted that under the version of AR 135-18 that was in effect when the January 12, 2004 board was announced on October 9, 2003, "officers are released from active duty when they have attained 20 years of [active service]," unless extended.  R. 24.  According to the advisory opinion, AR 135-18 did not implement the continuation board system until its November 1, 2004 revision, which was promulgated after the January board convened. In addition, the NGB explained that the "[USNORTHCOM (where Col. Cameron was

---

who have 19 or more years of AS on or before 1 October 2005 and 30 September 2006 will be included for consideration. . . . Officers who are currently on an approved AS continuation, whose continuation expires on or between 1 October 2005 and 30 September 2006 are also included."  R. 16.

stationed)] was a relatively new [command]," R. 25, and that "[t]o fill this new command's Title 10 AGR requirements career AGRs were reassigned and one time occasional tour officers were put on orders to meet the demand." R. 25.

The NGB advisory opinion to the ABCMR concluded as follows:

> since [Cameron] was on a one time occasional tour, as evidenced by his original Title 10 AGR order, he was not being integrated into the career Title 10 program. There was no expectation or desire on part of the Title 10 program to utilize the officer beyond the time period on his original order. . . . He was not notified along with the rest of the career Title [10] AGRs of the [AFSTCB] because he was on an occasional tour and when the issue arose he was reminded that he was on a one time occasional tour and would not be boarded by the Title 10 AGR program. . . . COL Cameron and his state were both informed, since his onetime tour was ending in the Title 10 AGR program, that if the state intended to return him to Title 32 AGR status at the end of his tour, then the state must include him in their board. This was consistent with the management of each program separately to meet the needs of each program.

R. 25.

In response to the ABCMR's specific question as to whether there were any regulations that expressly precluded Colonel Cameron from being boarded for continued active duty, the NGB explained that "[t]here was no specific written regulation that addresses this issue. By the terms of its definition and as evidenced by the order, a onetime occasional tour is one time. . . . Not considering one time occasional tour officers . . . was consistent with regulation, policy and practice." R. 26.

The ABCMR also sought and received an advisory opinion from the ORARNG, dated April 27, 2011. The ORARNG advisory opinion stated, in part, as follows:

> COL Cameron was on active duty orders under authority Title 10 USC 12301(d). . . . COL Cameron's Official Military Personnel File (OMPF) should have been reviewed by the 2004 [AFSTCB] based on the criteria

> sent by NGB for Title 10 officers.  The comment from NGB stating that he
> was a Title 10 officer but not on a Title 10 program is NOT accurate.
> States were not authorized to review Title 10 officers per NGB guidance.

R. 57-58.

Following receipt of the NGB and Oregon advisory opinions, the ABCMR once

again denied Colonel Cameron's request for reinstatement, back pay, and consideration

by a Title 10 continuation board.  R. 9.  In its November 8, 2011, decision, the ABCMR

explained that Colonel Cameron was a Title 32 AGR officer who was subject to state

authority.  Id.  The ABCMR further explained that Colonel Cameron's August 19, 2003

orders "transferred the applicant from Title 32 AGR status to Title 10 AGR status for a

'one time occasional tour,'" R. 5, but that serving in "Title 10 AGR status" did not

transfer Colonel Cameron into the "Title 10 AGR program."  R. 9 at ¶ 3.  He was given a

"temporary" as opposed to "indefinite" tour.  R. 9 at ¶ 4.  As such, the ABCMR

concluded, Colonel Cameron was entitled only to consideration for continuation beyond

20 years by the ORARNG continuation board and "unfortunately for him, his State did

not continue any Oregon Title 32 Program officers beyond 20 years of service."  R. 9 at ¶

6.

After receipt of the ABCMR's November 2011 decision, the case was scheduled

for briefing.  The government filed the administrative record on January 5, 2012.  On

March 2, 2012, Colonel Cameron filed his motion for judgment on the administrative

record.  That same day, the government filed its motion to dismiss, or, in the alternative

motion for judgment on the administrative record.  After briefing on these motions was

completed, the court held oral argument on August 8, 2012.

## II.   DISCUSSION

### A.   The court possesses subject matter jurisdiction over Colonel Cameron's claim.

The government moves to dismiss Colonel Cameron's case for lack of subject

matter jurisdiction on the grounds that he has failed to state a money-mandating claim.

Although the Tucker Act vests the Court of Federal Claims with jurisdiction over claims

against the government for money damages, "it does not create any substantive right

enforceable against the United States for money damages." United States v. Testan, 424

U.S. 392, 398 (1976).  In order for this court to have jurisdiction over a claim for money

damages, the plaintiff "must identify a separate source of substantive law that creates the

right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005)

(en banc in relevant part).  The standard of review for a motion to dismiss for lack of

subject-matter jurisdiction under RCFC 12(b)(1) is well-settled.  The plaintiff bears the

burden of establishing subject-matter jurisdiction by a preponderance of the

evidence. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir.

2011); M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir.

2010) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir.

1988)).  When a party has moved to dismiss for lack of subject matter jurisdiction, the

alleged facts in the complaint are viewed as true.  Pixton v. B & B Plastics, Inc., 291 F.3d

1324, 1326 (Fed. Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Likewise, this court must "draw all reasonable inferences in [plaintiff's

- 15 -

favor]." <u>Anaheim Gardens v. United States</u>, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006)

(quoting <u>Gould, Inc. v. United States</u>, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

The government initially moved to dismiss Colonel Cameron's claim for lack of

jurisdiction for failure to invoke a money mandating statute.  Def.'s Mot. to Dismiss at

15.  In response, Colonel Cameron has clarified that he seeks back pay pursuant to the

Military Pay Act, 37 U.S.C. § 204.  Pl.'s Resp. at 14.  The government concedes that if

Colonel Cameron has invoked 37 U.S.C. § 204, then the court possesses jurisdiction over

this case.  Def.'s Reply at 1.  The court finds that Colonel Cameron has met his burden to

establish subject-matter jurisdiction.  Colonel Cameron claims that he was wrongfully

discharged from active duty.  If he is correct, he "retains the right to basic pay." <u>Sobczak</u>

<u>v. United States</u>, 93 Fed. Cl. 625, 631-32 (2010); <u>Stuart v. United States</u>, 100 Fed. Cl. 74,

76 (2011).  For this reason, this court has jurisdiction over his claim. <u>Murphy v. United</u>

<u>States</u>, 993 F.2d 871, 872 (Fed. Cir. 1993) ("Because he claims monetary relief, that he

was entitled to compensation unless properly released from active duty, the Claims Court

ha[s] jurisdiction."); <u>Stuart</u>, 100 Fed. Cl. at 76.  The government's motion to dismiss for

lack of subject matter jurisdiction is **DENIED**.

**B.**     **Colonel Cameron's claim is justiciable.**

Alternatively, the government moves to dismiss for failure to state a claim upon

which relief can be granted, arguing that Colonel Cameron's claim is nonjusticiable.  The

existence of jurisdiction does not confirm the court's ability to supply relief. <u>Murphy</u>,

993 F.2d at 872.  The issue must also be justiciable; it must be within the competency of

the court.  <u>Id.</u>  "Justiciability is distinct from jurisdiction; it depends on 'whether the duty

asserted can be judicially identified and its breach judicially determined, and whether

protection for the right asserted can be judicially molded.'" Id. (quoting Baker v. Carr,

369 U.S. 186, 198 (1962)); Yoge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988)

(An issue is nonjusticiable if there are no clear "tests and standards which [the courts] can

soundly administer within their special field of competence."). Where a claim is

nonjusticiable, the appropriate action is for a court to dismiss the claim for failure to state

a claim upon which relief can be granted. Id.

To avoid dismissal for failure to state a claim upon which relief may be granted

under RCFC 12(b)(6), the complaint must contain facts sufficient to "'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff's factual

allegations must "raise a right to relief above the speculative level" and cross "the line

from conceivable to plausible." Bell Atl. Corp., 550 U.S. at 555. "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp., 550 U.S.

at 555, 557). In considering a motion under RCFC 12(b)(6), "the court must accept as

true the complaint's undisputed factual allegations and should construe them in a light

most favorable to the plaintiff." Cambridge v. United States, 558 F.3d 1331, 1335 (Fed.

Cir. 2009) (citing Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United

States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

Judicial review is appropriate where the military's discretion is limited, and Congress has established "tests and standards" against which the court can measure its conduct.  See Murphy, 993 F.2d at 873; Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990).  "Because 'decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments,' the substance of such decisions . . . is frequently beyond the institutional competence of courts to review."  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (quoting Gilligan v. Morgan, 413 U.S. 1, 10 (1973); citing Voge, 844 F.2d at 780). "Judgments made by military officials or administrative bodies that a particular officer does not merit promotion or retention fall into this category, and courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so."  Id.  Thus, the Court of Federal Claims will not "review those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in service."  Id.

Nevertheless, even where the military is given unlimited discretion by Congress, it is bound to follow its own procedural regulations if it chooses to implement some.  Murphy, 993 F.2d at 873 (citing Sargisson, 913 F.2d at 921); Lindsay, 295 F.3d at 1257 ("The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them."); Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995) ("[A]lthough the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a

challenge to the particular <u>procedure</u> followed in rendering a military decision may present a justiciable controversy.") (emphasis in original).  "A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion.  The court . . . merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard."  <u>Murphy</u>, 993 F.2d at 873.  Accordingly, where, as here, the military has established procedures for determining the eligibility of a member for consideration by a retention board, a claim for relief based on an alleged failure to follow those procedures states a justiciable controversy.  In this case, Colonel Cameron's complaint alleges that he was denied pay because the Army failed to follow its own directives and regulations by not bringing his record before a continuation board as he alleges it was required to do.  Whether the regulations compel this result is a determination within the scope of judicial competence, and therefore the ABCMR's decision with respect to the Army's alleged procedural failure is reviewable by this court.  Accordingly, the government's motion to dismiss Colonel Cameron's claim for failure to state a claim upon which relief can be granted is **DENIED**.

### C.    The ABCMR decision is not arbitrary, capricious, or contrary to law.

The parties have cross-moved for judgment on the administrative record under RCFC 52.1.  Pursuant to 10 U.S.C. §1552(a)(1), the ABCMR has broad authority to correct inaccurate military records.  "In reviewing a decision of a military corrections board, the court seeks to determine 'whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law.'"  <u>Lewis v. United States</u>, 458

F.3d 1372, 1376 (Fed. Cir. 2006) (citing Porter v. United States, 163 F.3d 1304, 1312

(Fed. Cir. 1998)); see also Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir.

2005) (citing Haselrig v. United States, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).

To make that decision, the court must limit its review to the administrative record

as it was presented to the ABCMR.  Metz v. United States, 466 F.3d 991, 998 (Fed. Cir.

2006).  In reviewing the administrative record, this court recognizes the strong

presumption that military officials, including those sitting on the ABCMR, have acted in

accordance with the law.  Bockoven v. United States, 727 F.2d 1558, 1563 (Fed. Cir.

1984); Bernard v. United States, 59 Fed. Cl. 497, 501 (2004).  Notwithstanding that

deference, the military must follow any regulations it issues.  Fisher, 402 F.3d at 1177

(citing Murphy, 993 F.2d at 873).

A regulation is construed in the same manner as a statute, by ascertaining its plain

meaning.  Lengerich v. Dep't of Interior, 454 F.3d 1367, 1370 (Fed. Cir. 2006)

(citing Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414-15 (1945)).  "In

interpreting a regulatory provision, we examine the text of the regulation as a whole,

reconciling the section in question with sections related to it.  Lengerich, 454 F.3d at

1370 (citing Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1577-78).  In addition, "an

agency's construction of its own regulations is entitled to substantial deference."  Id. at

1372 (quoting Lyng v. Payne, 476 U.S. 926, 939 (1986); Martin v. Occupational Safety

& Health Review Comm'n, 499 U.S. 144, 150 (1991)).  To merit deference, an agency's

interpretation "(1) must have been directed to regulatory language that is unclear, (2)

must have been actually applied in the present agency action, and (3) must not be plainly

erroneous or inconsistent with the regulation." Id. (quoting Gose v. U.S. Postal Serv., 451

F.3d 831, 833 (Fed. Cir. 2006)).  The court defers to an agency's interpretation of its

regulations, even in a legal brief, unless the interpretation is "'plainly erroneous or

inconsistent with the regulation[s]'" or there is any other "'reason to suspect that the

interpretation does not reflect the agency's fair and considered judgment on the matter in

question.'[8]"  Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 880 (2011)

(quoting Auer, 519 U.S. at 461, 462); Talk America, Inc. v. Michigan Bell Telephone

Co., 131 S. Ct. 2254, 2260-61 (2011) (same); Reizenstein v. Shinseki, 583 F.3d 1331,

1335-36 (Fed. Cir. 2009) (same).

Colonel Cameron argues that the ABCMR's decision must be reversed because

under the plain wording of AR 135-18, as amended, he was entitled to "automatic"

consideration by a Title 10 continuation board.  Colonel Cameron argues that there is

only a single AGR program and that any Title 10 officer within the zone of consideration,

i.e. with the requisite years of service, had to be considered for continued active duty by a

board authorized to recommend continued active duty service.

The government argues that the ABCMR properly relied on the advisory opinions

of the NGB in denying Colonel Cameron's request for relief.  The government contends

---

[8]     This might occur when the agency's interpretation conflicts with a prior
interpretation, see, e.g., Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994), or
when it appears that the interpretation is nothing more than a "convenient litigating
position," Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 213 (1988), or a "'post
hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action
against attack," [Auer v. Robbins, 519 U.S. 452, 462 (1997)] (quoting Bowen, [488 U.S.]
at 212; alteration in original).

Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2166-67 (2012).

that consistent with those NGB opinions, the ABCMR correctly concluded that Colonel Cameron was not "eligible" for consideration for continued active duty service because he was only in Title 10 status for a limited one time tour.  Therefore, the government continues, the Army did not err in failing to have an NGB Title 10 continuation board consider Colonel Cameron for continued active duty.  Rather, the ABCMR properly concluded that only the ORARNG could have continued Colonel Cameron in Title 32 status.

The court agrees with the government and finds for the reasons that follow that the NGB opinions defining "eligibility" for continued active duty service are entitled deference and that based on those opinions Colonel Cameron was not "eligible" for consideration for continued active duty beyond 20 years.  As such, the ABCMR decision must be upheld.

We begin with repeating the relevant language in AR 135-18, which states:

> AGR commissioned officers and warrant officers may be retained on AD beyond 20 years of AS [active service] through a board process, convened at least annually.  Consideration of <u>eligible</u> officers for retention is automatic, as such; officers need not apply for retention consideration.

AR 135-18 ¶ 4-7*b* (emphasis added).  The term "eligible" is not defined in AR 135-18.  Colonel Cameron argues that a definition is not necessary because the meaning of "eligible" is clear from the language of the provision.  According to Colonel Cameron, "any" Title 10 AGR officer with 19 years active service was eligible for consideration for continued active duty.  Because Colonel Cameron was in Title 10 status when he reached 19 years, he contends he was entitled to be considered by a board for active duty AGR

officers. Colonel Cameron argues that any interpretation by the NGB to the contrary is barred by AR 135-18 ¶ 1-7*b*, which states that "This regulation takes precedence over any regulation (or other publication) promulgated pursuant to paragraph 1-4 [which, in relevant part, gives the Chief of the NGB the right to develop and implement policies with respect to the ARNGUS AGR]."  Paragraph 1-7 goes on to state that, "In cases of conflict between provisions of this regulation and such publications, this regulation will govern . . . ."  AR 135-18 ¶ 1-7*b*.

The government argues that the NGB had the authority to determine which active duty AGR officers could be extended beyond 20 years and that the decision not to have the NGB board Title 10 AGR officers who had transferred from Title 32 for limited "one time occasional tours of duty" was rational, consistent with the distinctions drawn between Title 10 and Title 32 AGR officers in AR 135-18, and entitled to deference.  The government argues that under AR 135-18 some officers are placed in the Title 10 "program" while others are placed on FTNGD in the Title 32 "program."  The government further argues that while FTNGD AGR officers may switch into the Title 10 program, those Title 32 officers who serve for a limited period of time under orders that place them on active duty for a one time tour will ordinarily revert to Title 32 status. Here, the government argues, Colonel Cameron was entitled to consideration for continuation beyond 20 years under AR 135-18 only by a continuation board established under that regulation by his home state of Oregon.

The court agrees with the government that the NGB's reading of AR 135-18 is rational and entitled to deference.  First, the plain language of AR 135-18 does not

compel the NGB to consider all AGR officers in Title 10 status for continuation on active duty.  AR 135-18 includes the undefined word "eligible."  Because the term is undefined, the NGB had the authority under AR 135-18 ¶ 1-4 to define the term and make choices regarding its meaning.  AR 135-18 ¶ 1-4*d* ("The Chief, National Guard Bureau (CNGB) will . . . . Under overall Army policy, develop and implement policies and procedures for efficient management and effective use of the ARNGUS AGR personnel force.  Such policies will be within the guidelines of the program prescribed by this regulation.").  Second, the court finds that the NGB's decision not to include AGR officers on one time occasional tours of active duty for consideration by active duty continuation boards was rational and not precluded by any other provision in AR 135-18.  While AR 135-18 provided that AGR officers coming up on 20 years were entitled to consideration for retention beyond 20 years by some continuation board, the NGB was not required to ignore an officer's orders and decide whether the officer should be considered by an active duty board or FTNGD board in the officer's state program.  Here, Colonel Cameron's active duty tour was, by its terms, expressly limited to 2 years and 5 months.  R. 118.  Colonel Cameron knew that his status as a Title 10 AGR officer would expire on a set date regardless of when he reached 20 years.  Had he not reached 20 years of service, he would have likely reverted to his Title 32 status.  Under AR 135-18 ¶ 2-6, upon entering the AGR program AGR officers are ordered to active duty or FTNGD for "an initial 3 year period" and "subsequent periods of duty for AGR officers . . . [are] <u>for an indefinite period</u> [up to 20 years unless sooner released or retained]." AR 135-18 ¶ 2-6*b* (emphasis added).  Thus, Colonel Cameron's transfer from Title 32 FTNGD status to

Title 10 active duty status for a limited period of time suggests that, unlike other Title 10 officers who had initially been ordered to active duty and thereafter served for "an indefinite period" in that status, Colonel Cameron (had he not reached 20 years) would have been expected to return to the ORARNG and revert to his Title 32 status.  In such circumstances, the NGB's decision to place with the State the discretion to choose whether to keep Colonel Cameron beyond 20 years was consistent with AR 135-18.  Put another way, AR 135-18 guaranteed Colonel Cameron the right to be considered by a continuation board, but not specifically a Title 10 continuation board.  The NGB had the authority and discretion under AR 135-18 to manage the process and to decide, given Colonel Cameron's time-limited Title 10 orders, which continuation board should consider him for continuation beyond 20 years.

Where, as here, the organization charged with implementing the continuation policy—the NGB—does so in a manner that rationally implements the policy of the regulation, its decision is entitled to deference.  Auer, 519 U.S. at 462-63; Lengerich, 454 F.3d at 1372; Gose, 451 F.3d at 833.[9]  The ABCMR's reliance on the NGB's eligibility determination was therefore supported and will be affirmed.

---

[9] For this same reason, the ORARNG's advisory opinion that Colonel Cameron should have been considered for retention by a Title 10 continuation board, R. 57-58, is not entitled to deference and is irrelevant.  For the purpose of determining this court's jurisdiction over Colonel Cameron's claims, to the extent the ORARNG erred in failing to consider Colonel Cameron for retention by a Title 32 continuation board, Colonel Cameron's dispute is with the State of Oregon and not the United States.  Such claims cannot be brought in this court under the Tucker Act.  See United States v. Sherwood, 312 U.S. 584, 588 (1941) ("if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court.").

**III.**     **CONCLUSION**

For the above-stated reasons, the government's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is **DENIED**.  The government's motion in the alternative for judgment on the administrative record is **GRANTED**.  The plaintiff's motion for judgment upon the administrative record is **DENIED**.  The clerk is directed to enter judgment accordingly. Each party is to bear its own costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge